<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALIM MUHAMMED,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LVI DEMOLITION SERVICES INC., MAZZOCHI WRECKING, INC., and PRIME ENVIRONMENTAL SERVICES, INC.,<br><br>　　　　　Defendants. | Civil Action No. 12-5260 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

## I. INTRODUCTION

Before the Court is a Motion for Summary Judgment by Defendant LVI Demolition Services Inc. ("LVI"). (D.E. No. 45). The Court has considered the parties' submissions and decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants LVI's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] These background facts are taken in part from the parties' statements of undisputed material facts. (D.E. No. 45-1, Defendant's Statement of Uncontested Material Facts Pursuant to Fed. R. Civ. P. 56 ("Def. SMF"); D.E. No. 48, Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts ("Pl. SMF") and Plaintiff's Rule 56.1 Statement of Supplemental Facts ("Pl. Supp. SMF")). Though the Court will strive to highlight any dispute, the Court will deem any statement of fact which was not denied by Plaintiff with a citation to the record as undisputed for purposes of this motion. *See McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) ("[F]ailure to reference evidence of record demonstrates that there is no reason to disbelieve the statements of fact contained in the Paragraphs at Issue. The Court will thus deem the facts recited in the Paragraphs at Issue to be undisputed . . . .") (internal citation omitted); *Maultsby v. Rih Acquisitions NJ, LLC*, No. 09-4376, 2011 WL 6779556, at *1 n.1 (D.N.J. Dec. 27, 2011) ("For those statements of facts for which plaintiff did not properly deny with a citation to the record, and for which the Court finds supported in the record, the Court deems them admitted.").

LVI was the general contractor for the demolition of the Douglas-Harrison Development in Newark, New Jersey ("the project"). (D.E. No. 45-5, Certification of David Pearson[2] ("Pearson Cert.") ¶ 2). LVI contracted with Prime Environmental Services ("Prime") to perform asbestos abatement work for the project. (Pearson Cert. ¶ 3; *see also* Def. SMF ¶ 60; Pl. SMF ¶ 60).

Plaintiff Muhammad Salim is a citizen of Florida who worked on the project for approximately ten days in 2010.[3] (Def. SMF ¶¶ 2, 5; Pl. SMF ¶¶ 2, 5). Plaintiff's work involved asbestos abatement. The parties dispute whether Plaintiff was employed by LVI or Prime. (Def. SMF ¶¶ 3-4; Pl. SMF ¶¶ 3-4).

Pursuant to its agreement with LVI, Prime was obligated to pay its employees in accordance with the terms of a Collective Bargaining Agreement ("CBA"). (Pearson Cert. ¶ 4). Under the CBA, the prevailing wage for asbestos removal workers at the relevant time was $27.87 per hour plus benefits of $18.87 per hour, totaling $46.74 per hour. (*Id.* ¶ 5).

Plaintiff received three paychecks during his employment on the project. He received his first paycheck after his first day of work from an LVI supervisor inside of the LVI trailer. (Def. SMF ¶ 16; Pl. SMF ¶ 16). Plaintiff does not recall the supervisor's name, but recalled that they worked together on a different project ten years earlier. (*Id.*). Plaintiff complained to the LVI supervisor that the amount on his paycheck was incorrect. (*Id.*).

Plaintiff received his second paycheck after four days of work. (Def. SMF ¶ 17, Pl. SMF ¶ 17). As with the first paycheck, he received it inside of the LVI trailer. (*Id.*).

---

[2] David Pearson worked as a Regional Manager for LVI, and was Regional Manager for the branch office responsible for the project. (Pearson Cert. ¶ 2).

[3] During his deposition, Plaintiff testified that he provided an interrogatory response stating that, "[t]o the best of Plaintiff's recollection, Plaintiff worked on March 23, 1010; March 28 through 31, 2010; and April 4th through April 8th 2010." D.E. No. 45-3, Certification of John H. Schmidt, Jr., Esq., Ex. B, Deposition of Salim Muhammad ("Muhammad Tr.") at 33). He clarified that March 23, 1010 referred to March 23, 2010. (*Id.*).

Plaintiff was instructed to obtain his third paycheck from the Prime office. (Def. SMF ¶ 17; Pl. SMF ¶ 17). When Plaintiff arrived at the Prime office, he complained loudly about having to go to that office to receive his check, and was asked to leave. (Def. SMF ¶ 18, Pl. SMF ¶ 18). He then went to his car and waited for one of the office staff to bring him the check. (*Id.*). Once he received the check, Plaintiff stated that he returned to the LVI trailer to complain again. (Def. SMF ¶ 19; Pl. SMF ¶ 19).

After receiving his third paycheck, Plaintiff spent two days away from the worksite on furlough. (Def. SMF ¶ 20; Pl. SMF ¶ 20). When he returned following the furlough, he was informed that his employment was terminated. (*Id.*). Plaintiff does not know the name of the individual who terminated him, and he did not receive anything in writing regarding his termination. (Def. SMF ¶¶ 21, 22; Pl. SMF ¶¶ 21, 22).

Plaintiff claims that he lodged various complaints about his wage before and after his termination. First, he alleges that he complained to various supervisors after receiving each of his checks, but he does not recall the names of everyone he spoke to. (Muhammad Tr. at 46:8-52:9). Second, he claims that he went to Newark City Hall several days before his termination and spoke with the secretary in the Affirmative Action Office about not receiving the prevailing wage. (Def. SMF ¶ 23; Pl. SMF ¶ 23). He said that the secretary wrote down his phone number, but he was never contacted by anyone, and he does not know whether anyone from Newark City Hall contacted LVI or Prime about his complaints. (*Id.*). Plaintiff also claims that he went to Newark City Hall following his termination, and he again visited the Affirmative Action Office. (Def. SMF ¶¶ 25-26; Pl. SMF ¶¶ 25-26). There, Plaintiff wrote out his complaint and gave it to an officer; however, he never received a response. (*Id.*). In addition, Plaintiff claims that he spoke

with Newark Councilman Darren Shariff and Mehdi Mohammadish, Newark's Acting Engineering Director. (Def. SMF ¶¶ 28; Pl. SMF ¶ 28).[4]

Finally, Plaintiff asserts that on March 21, 2011, the New Jersey Department of Labor and Workforce Development sent a letter to Defendant advising it that it might be in violation of the New Jersey Prevailing Wage Act (PWA). (Pl. Supp. SMF ¶ 17). He further asserts that on September 22, 2010, the Clerk of the City of Newark drafted a letter to notify the City's business administrator and corporation counsel that there was a request for the project to be reviewed regarding its prevailing wage obligations. (*Id.* ¶ 18).

## III. LEGAL STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and if, when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to a judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012).

The moving party must first show that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, the burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In presenting that evidence, the non-moving party must offer specific facts that establish a genuine

---

[4] The parties' statements of material facts do not include the dates on which Plaintiff claims each of these events occurred.

issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Ultimately, the non-movant must show that there is "evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *Celotex,* 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003).

## IV. DISCUSSION

### a. Retaliation Pursuant to the New Jersey Prevailing Wage Act

LVI argues that it is entitled to summary judgment for three reasons: (1) Plaintiff was paid in excess of the prevailing wage, (2) Plaintiff was not employed by LVI, and (3) Plaintiff cannot establish that he was retaliated against. (D.E. No. 45-2, Brief in Support of Motion for Summary Judgment Filed on Behalf of Defendant LVI Demolition Services, Inc. ("Def. Mov. Br.") at 12-15).

First, LVI argues that it is entitled to summary judgment on Plaintiff's PWA claim because Plaintiff cannot establish that he was paid less than the prevailing wage under the PWA. (Def. Mov. Br. at 13). Indeed, there is no evidence that Plaintiff was paid less than the prevailing wage under the PWA—he has produced no paystubs or other documents indicating his wage. (Def. SMF ¶ 8; Pl. SMF ¶ 8). In addition, Plaintiff was identified on the Prime Certified Payroll records as being paid a total wage of $47.72 per hour. (Def. SMF ¶ 52; Pearson Cert., Ex. D (Prime Certified Payroll Records)). As mentioned above, at the relevant time, asbestos removal workers

were required to be paid a total wage of $46.74 per hour. (Def. SMF ¶ 86; Pearson Cert. ¶ 5). Plaintiff does not contest that $46.74 per hour was the prevailing wage. (Def. SMF ¶ 86; Pl. SMF ¶ 86). Rather, Plaintiff argues that he does not need to demonstrate that he was actually underpaid in order to receive relief—he asserts that he is merely required to prove a *reasonable belief* that he was underpaid. (Pl. Opp. Br. at 5-6).

To resolve this question, the Court must turn to the language of the statute. In seeking relief, Plaintiff relies on the section of the PWA that prohibits an employer from discharging or otherwise discriminating against a worker who

> has made any complaint to his employer, to the public body or to the commissioner that he has not been paid wages in accordance with the provisions of this act, or because the worker has caused to be instituted or is about to cause to be instituted any proceeding under or related to this act, or because the worker has testified or is about to testify in any such proceeding. . . .

N.J.S.A. § 34:11-56.39. Plaintiff is correct that this section does not expressly require that the employee be underpaid. However, Plaintiff's reliance on this provision in seeking relief is misplaced because it does not provide Plaintiff with a cause of action for recovery. In fact, it explicitly states that the remedy for a statutory violation is that the employer will be guilty of a disorderly persons offense and subject to fines, and that the Commissioner of Labor is authorized to assess and collect administrative penalties. *Id.* Plaintiff has provided no case law to support his argument that has an individual right to recover under this section.

The PWA does, however, include a section permitting recovery by individual workers, which states as follows:

> If any workman is paid by an employer less than the prevailing wage to which such workman is entitled under the provisions of this act such workman may recover in a civil action the full amount of such prevailing wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court.

6

N.J.S.A. § 34:11-56.40.  Thus, to recover under this section, a workman must be "paid by an employer less than the prevailing wage."  *Id.*; *see also Meyers v. Hefferman*, No. 12-2434, 2014 WL 2234803, at *5 (D.N.J. July 8, 2014) (the Prevailing Wage Act "simply authorizes an employee who has received less than the prevailing wage to bring a civil action for recovery of any additional wages owed by the employer.").  Plaintiff has pointed to no case law to support that a "reasonable belief" that he was paid less than the prevailing wage enables him to recover under this section.  As a result, Plaintiff does not have an individual remedy against LVI because there is no evidence that he was paid less than the prevailing wage.  LVI is entitled to summary judgment on the PWA claim for this reason alone.

In addition, even if Plaintiff could recover individually despite being paid in excess of the prevailing wage, there is no evidence that he was retaliated against by LVI.  Plaintiff does not recall the names of the individuals at LVI he allegedly complained to after receiving his checks, and it is therefore unclear that he in fact complained to LVI about his wage.  (Muhammad Tr. at 46:8-52:9).  Similarly, Plaintiff does not know the name of the individual who allegedly terminated his employment.  (Muhammad Tr. at 55:1-7).  There is therefore no evidence that Plaintiff was in fact terminated by LVI, not Prime, or that his complaints were the basis for his termination.

Moreover, though Plaintiff states that he visited the Affirmative Action office in Newark City Hall prior to his termination, he has not set forth any evidence demonstrating that anyone contacted LVI or Prime regarding his complaints.  (*Id.* at 91:24-95:16).  In addition, Plaintiff points to two letters raising concerns about PWA violations at the project that he argues gave Defendant "notice of Plaintiff's complaints and . . . motivation to terminate his employment."  (Pl. Opp. Br. at 8).  However, the letters are dated March 21, 2011 and September 22, 2010—months after Plaintiff's termination in April 2010.  (D.E. No. 48, Exs. 6 (May 21, 2011 Letter), 7 (Sept. 22,

2010 Letter)). There is also no indication in the letters that they refer to any time period during which Plaintiff was employed at the project. (*Id.*). Plaintiff has no evidence linking his termination to any alleged complaints regarding the prevailing wage. Finally, the fact that Plaintiff was paid in excess of the prevailing wage suggests that Defendant would have no reason to discharge Plaintiff due to his complaints. As a result, it is not plausible that a reasonable trier of fact could find that Plaintiff was terminated as a result of complaining about his wage.

LVI's third argument is that it is entitled to summary judgment on Plaintiff's PWA claim because Plaintiff was employed by Prime, not by LVI. Because the Court grants summary judgment for LVI on this claim on other grounds, it need not address this argument.

### b. Wrongful Discharge Contrary to a Clear Mandate of Public Policy

Plaintiff's second cause of action is for wrongful discharge contrary to a clear mandate of public policy. (D.E. No. 3 ("Am. Compl.") ¶¶ 38-48). In New Jersey, "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 181 (1988) (quoting *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980)). In addition, an employee must demonstrate that "he was in fact discharged in retaliation for taking action in opposition to corporate action which violated a clear mandate of public policy, and not for some other reason." *House v. Carter-Wallace, Inc.*, 232 N.J. Super. 42, 54 (App. Div. 1989).

Plaintiff argues that Defendant failed to raise this claim in its moving brief, and therefore it waived its right to do so. (D.E. No. 48-9, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp. Br.") at 3-4). In particular, Plaintiff cites to *D'Alessandro v. Bugler Tobacco Co.*, No. 5-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12,

8

2007), for the proposition that "[a] moving party may not raise issues . . . in a reply brief that should have raised in its initial brief." Though it is generally true that a moving party may not raise issues in its reply brief not raised in its opening brief, the Court has authority to consider Plaintiff's public policy claim *sua sponte*. The Third Circuit has held that district courts may enter summary judgment *sua sponte* as long as the adversarial party is "on notice," meaning it "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2003) (internal citations omitted). Here, Plaintiff clearly has notice that the Court may enter summary judgment on this issue. (*See* Pl. Opp. Br. at 4 ("Even if the Court addresses the merits of Plaintiff's public policy claim . . . .")). In addition, Plaintiff has fully briefed the merits of this claim in its opposition brief. As a result, the Court is not concerned that Plaintiff has been deprived of an opportunity to address this claim, and the interests of justice and efficiency weigh toward considering its merits at this time.[5]

LVI is entitled to summary judgment on Plaintiff's public policy claim because Plaintiff has put forth no evidence demonstrating that his discharge was related to his complaints regarding the prevailing wage. To the contrary, "the record before the court on the motion[] for summary judgment [does] not contain sufficient evidence from which it could be inferred that the reason for [Plaintiff's] discharge was the alleged opposition he expressed. . . ." *House*, 232 N.J. at 54. As discussed above, Plaintiff does not have any paperwork regarding his termination, and he does not even recall who fired him. (Def. SMF ¶ 21; Pl. SMF at 7). Plaintiff merely asserts "Defendant has produced *no* evidence that Plaintiff was discharged for any reason *other* than his complaints

---

[5] The Court further notes that Defendant argued that it is entitled to summary judgment on Plaintiff's public policy claim in its reply brief. (D.E. No. 49, Reply Brief in Support of the Motion for Summary Judgment Filed on Behalf of Defendant LVI Demolition Services, Inc., at 1-2). Plaintiff did not seek a sur-reply.

about not being paid the prevailing wage." (Pl. Opp. Br. at 3 (emphasis added)). Yet to ultimately succeed on a public policy claim, it is Plaintiff who bears the burden of showing that he was discharged in retaliation. *House*, 232 N.J. at 54. Here, for the reasons set forth above, Plaintiff is "unable to point to any testimony or document . . . of direct or indirect support for his feeling that his discharge was retaliatory." *Id.* at 55. Accordingly, no reasonable fact finder would find this claim meritorious.

### c. Failure to Mitigate Damages and Amount in Controversy

In addition to the grounds discussed above, LVI argues that it is entitled to summary judgment because Plaintiff has failed to mitigate its damages and because the amount in controversy does not exceed $75,000. (Def. Mov. Br. at 15-18). The Court does not address these arguments because it decides this motion on other grounds.

### V. CONCLUSION

For the reasons above, the Court GRANTS Defendant's motion for summary judgment.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
